**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**KIMBERLY A. ZAVATTARO,**

      **Plaintiff,**

                            **Case No. 2:18-cv-3362**

      **v.**                         **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kimberly A. Zavattaro for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On June 12, 2014, Plaintiff filed an application for benefits, alleging that she has been disabled since June 1, 2005. R. 66, 135, 147, 221–22. Plaintiff's application was denied initially and upon reconsideration, R. 149–53, 155–59, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 160. Administrative Law Judge Peter R. Lee ("ALJ") held a hearing

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

on February 6, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 86–134. In a decision dated May 9, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 1, 2005, the alleged disability onset date, through June 30, 2011, the date on which Plaintiff was last insured. R. 66–80. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 11, 2018. R. 1–5. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 25, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On March 11, 2020, the case was reassigned to the undersigned. ECF No. 25. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

3

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

## B.    Sequential Evaluation

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 30 years old and met the insured status requirements until June 30, 2011, the date on which she was last insured for disability insurance benefits. R. 74, 79.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, June 1, 2005, until the lapse of her insured status. R. 74.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lupus and obesity. *Id*. The ALJ also found that Plaintiff's fibromyalgia, hypothyroidism, and hypertension were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 74–75.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 75–79. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a telephone solicitor, a child care attendant/nursery school attendant, and a cashier. R. 78–79.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 65,000 jobs as an order clerk; approximately 48,000 jobs as a document prepaper; approximately 17,000 jobs as an addresser—existed in the  national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 80. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 1, 2005, her alleged disability onset date, through June 30,2011, the

date on which she was last insured. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief*, ECF No. 21. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 24.

## IV.   DISCUSSION

### A.   Obesity

Plaintiff argues that the ALJ erred by failing to meaningfully evaluate Plaintiff's obesity at step three and at subsequent steps in accordance with SSR 02-1p. *Plaintiff's Moving Brief*, ECF No. 21, at 13−23. Although obesity was removed as a "listed impairment" in 1999, the Court of Appeals for the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id*. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id*. (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the

combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory

9

system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

Here, the ALJ identified obesity as one of Plaintiff's severe impairments at step two of the sequential evaluatin. R. 74. At step three, the ALJ expressly noted the guidelines set forth in SSR 02-1p and concluded that Plaintiff's obesity, when considered in combination with her other impairments, does not meet or medically equal any listing, reasoning as follows:

In the present case, the record shows that between the June 1, 2005 alleged onset date and the June 30, 2011 date last insured, the claimant's lupus was generally under control and was not disabling, even in combination with her obesity. The claimant got married and had 2 children during this period, and her pregnancies were described as uneventful. The claimant did not have any postpartum flare-ups of lupus. The claimant testified that she had a lot of help from her parents in taking

10

> care of the children, but this is not documented in the record and progress notes
> from the period at issue generally note few complaints. In sum, I find that during
> the period from June 1, 2005 through June 30, 2011, even when obesity is
> considered in combination with the claimant's lupus, the claimant does not meet or
> equal any of the listings in Appendix 1, Subpart P, Regulations No. 4.

R. 75. The ALJ also discussed Plaintiff's lupus at step three, noting that the condition was

generally under control during the relevant time period. *Id*. At step four, the ALJ again

considered Plaintiff's obesity, finding that "even when obesity is considered in combination with

the claimant's lupus, it did not result in a disabling limitation of functioning." R. 77. In reaching

this finding, the ALJ specifically considered years of medical records detailing Plaintiff's lupus

as well as her fibromyalgia, including, *inter alia*, reports indicating that her lupus and

fibromyalgia had caused only minor symptoms, that Plaintiff was doing well, without rash or

joint issues in 2009, that Plaintiff had uneventful pregnancies without postpartum lupus flare-

ups, that her lupus was controlled with improved symptoms when she was restarted on Imuran,

and that she was able to care for her children without help from her parents. R. 76–78. The ALJ

also noted that Plaintiff was able to sit for an hour at the administrative hearing and was able to

drive to the hearing, and manifested very minor fibromyalgia trigger points. *Id.*; *see also* R. 68–

73 (detailing years of record evidence before step one of the sequential evaluation, including,

*inter alia*, Plaintiff's weight over the years, unremarkable physical examinations, progress notes

that she was doing well, and that Imuran controlled her lupus and reduced her symptoms), 74

(noting at step two that in July 2005, Plaintiff had only minor fibromyalgia trigger points and

that fibromyalgia was not mentioned as an issue until January 2014, which was after the date last

insured).

      Plaintiff nevertheless contends that the ALJ did not meaningfully consider her obesity,

lupus, or other impairments and instead made "[e]xotic observations such as plaintiff's marriage

or odd assertions of the lack of 'any postpartum flare ups of lupus[.]'" *Plaintiff's Moving Brief*, ECF No. 21, pp. 19–23. However, as set forth above, the ALJ properly considered Plaintiff's obesity at step three and at subsequent steps when he recognized Plaintiff's obesity as a severe impairment, recognized that he must consider the effect of Plaintiff's obesity on her other impairments, found that none of Plaintiff's impairments, whether considered singly or in combination, met or equaled a listed impairment, and specifically and in detail considered Plaintiff's musculoskeletal impairments–and the limitations imposed by the impairments–in determining Plaintiff's RFC. The ALJ expressly found, after engaging in that analysis, that Plaintiff's impairments did not preclude the performance of substantial gainful employment prior to June 30, 2011. R. 75–80; *see also Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; *Jones*, 364 F.3d at 505 (stating that if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination"); *Herron v. Comm'r of Soc. Sec.*, 386 F. App'x 68, 71 (3d Cir. 2010) (finding substantial evidence supported the ALJ's conclusion that the claimant did not suffer from a listed impairment where, *inter alia*, "[a]lthough [the claimant] is obese, there is substantial evidence that she could perform all activities of daily living and could drive and care for her children during this time"); SSR 02-1p. Finally, based on this record, to the extent that Plaintiff speculates—without citation to record evidence—that her obesity is disabling, such speculation is unpersuasive. *See Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical

evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."); *Vargas v. Colvin*, No. CV 15-2502, 2017 WL 123436, at *5 (D.N.J. Jan. 11, 2017) (affirming denial of benefits where, *inter alia*, "[a]lthough [the ALJ's] analysis is rather brief, it is appropriate given the absence of any medical evidence in the record indicating that Mr. Vargas's obesity has affected his functioning in any way. Further, Vargas points to none."); *Jones v. Colvin*, No. CV 14-6778, 2016 WL 7338528, at *6 (D.N.J. Dec. 19, 2016) ("Here, ALJ O'Leary considered Plaintiff's obesity both individually and in combination with his other impairments. Plaintiff points to no evidence in the record to illustrate that the ALJ failed to appropriately consider obesity."). The Court therefore finds that the ALJ's discussion of Plaintiff's obesity is sufficient and permits meaningful judicial review. *See Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p.

### B.  Step Three

Plaintiff next complains that the ALJ's analysis at step three of the sequential evaluation is flawed because it does not discuss medical equivalence, nor does it consider the combination of all of Plaintiff's impairments. *Plaintiff's Moving Brief*, ECF No. 21, pp. 23–33. Plaintiff specifically complains that the ALJ erred in evaluating her fibromyalgia, diabetes, hypothyroidism, hypertension, and lupus. *Id.*

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

### 1.     Fibromyalgia

Although listed under a heading challenging the ALJ's findings at step three, Plaintiff also apparently challenges the ALJ's consideration of her fibromyalgia at step two, suggesting that "we must begin with the total elimination" of her fibromyalgia as a non-severe impairment. *Plaintiff's Moving Brief*, ECF No. 21, pp. 23–29. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under SSR 12-2p, a claimant can establish fibromyalgia as a severe medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria

14

established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the

Classification of Fibromyalgia (the "1990 Criteria"),[3] or the 2010 ACR Preliminary Diagnostic

Criteria (the "2010 Criteria").[4] *Id.* "Appropriate medical evidence" includes a physician's

diagnosis along with documentation that the physician has "reviewed the person's medical

history and conducted a physical exam." *Id.* "Conclusory statements by a medical provider that a

patient suffers from fibromyalgia are insufficient to meet a claimant's burden at step two for

establishing a medically determinable impairment." *Fox v. Comm'r of Soc. Sec.*, No. 1:19-CV-

04879, 2020 WL 1888251, at *5 (D.N.J. Apr. 16, 2020).

Once fibromyalgia is determined to be a medically determinable impairment, an ALJ

must then evaluate "the intensity and persistence of the person's pain or any other symptoms and

---

[3] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) *"[e]vidence that other disorders that could cause the symptoms or signs were excluded*. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.* (emphasis added).

[4] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "*[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded*[.]" *Id.* (emphasis added). Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.*

determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p.
At step two, an ALJ considers whether the fibromyalgia is "severe" and considers "those
symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or
other symptoms cause a limitation or restriction that has more than a minimal effect on the
ability to perform basic work activities, [an ALJ] will find that the person has a severe
impairment(s)." *Id*. Next, fibromyalgia "cannot meet a listing in appendix 1 because
[fibromyalgia] is not a listed impairment. At step 3, therefore, [the ALJ] determine[s] whether
[fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for
inflammatory arthritis), or whether it medically equals a listing in combination with at least one
other medically determinable impairment." *Id*.

Here, the ALJ concluded at step two that the evidence established that Plaintiff's
fibromyalgia was a non-severe impairment, reasoning as follows:

> The claimant has fibromyalgia. Progress notes from February 6, 2001 note
> fibromyalgia with multiple tender spots, but on February 12, 2001, the claimant
> was noted to have only minor fibromyalgia spots (Exhibit 8F, pp. 24-25).
> Fibromyalgia tender spots were noted throughout the body on February 23, 2005,
> and the claimant was started on antifibromyalgia treatment (Exhibit 8F, p. 20), but
> on July 27, 2005, only very minor fibromyalgia trigger spots were noted (Exhibits
> 2F and 8F). Subsequent reports focus on the claimant's SLE and two pregnancies,
> and fibromyalgia was not mentioned again as an issue until January 17, 2014, when
> multiple trigger spots were noted (Exhibit 2F, p. 30), but this is well after the June
> 30, 2011 date last insured. During the period at issue, the record does not show a
> consistent history of widespread pain and at least 11 of 18 positive bilateral tender
> points, as required by the 1990 ACR Criteria for the Classification of Fibromyalgia.
> In addition, the record does not show a history of widespread pain and repeated
> manifestations of 6 or more fibromyalgia symptoms, or co-occurring conditions,
> such as fatigue, cognitive or memory problems, waking unrefreshed, depression,
> anxiety disorder, or irritable bowel syndrome, as required by the 2010 ACR
> Preliminary Diagnostic Criteria (Social Security Ruling (SSR) 12-2p).
> Accordingly, I find that the claimant's fibromyalgia had no more than a minimal
> effect on her ability to perform basic work activities during the period from June 1,
> 2005 through June 30, 2011 and was a "non-severe" impairment.

R. 74. While the ALJ did not specifically address fibromyalgia at step three, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing, including" fibromyalgia. *See Jones*, 364 F.3d at 505; *cf. Lopez*, 270 F. App'x at 122 (finding that the "ALJ's failure to discuss specific Listings is not reversible error . . . because the ALJ analyzed all the probative evidence and explained his Decision sufficiently to permit meaningful review"); *Rivera*, 164 F. App'x at 262−63; *Saich o/b/o N.E.S. v. Comm'r of Soc. Sec.*, No. CV 16-3346, 2017 WL 3718109, at *5 (D.N.J. Aug. 29, 2017) (finding the ALJ's medical equivalence analysis sufficient to allow for meaningful review because, although "brief, elsewhere in the decision (and particularly in his functional-equivalence analysis)[,]" the ALJ discussed the relevant medical and educational records and testimony). For example, in addition to his analysis at step two, the ALJ again considered Plaintiff's fibromyalgia at step four when crafting the RFC, stating that "[a]s discussed previously, very minor fibromyalgia trigger spots were noted on July 27, 2005 (Exhibits 2F and 8F), but fibromyalgia does not appear to be an issue again until January 17, 2014 (Exhibit 2F, p. 30). There is no evidence that the claimant's fibromyalgia was a 'severe' impairment until after the [date last insured] had passed." R. 78; *see also* R. 68−69, 71 (detailing medical evidence regarding Plaintiff's fibromyalgia prior to step one that further supports the ALJ's determination at later steps in the sequential evaluation). This thorough review by the ALJ of the evidence relevant to Plaintiff's fibromyalgia permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this

conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient.").

Plaintiff nevertheless contends that "[w]hen the Court compares these requirements [set forth in SSR 12-2p] with the treating rheumatologists [sic] treatment notes at Tr.357, 359-360, 366-367, 376, 380-382, 528-530, 543-549, and 558-560 it becomes an evidentiary certainty that plaintiff meets the criteria set forth by the Commissioner for the establishment of fibromyalgia as a severe impairment." *Plaintiff's Moving Brief*, ECF No. 21, p. 28. Plaintiff's argument is not well taken. Although, Plaintiff cites to multiple pages in the record in making this argument, she offers no discussion relating to these citations. *See id.* Notably, Plaintiff has not explained what this evidence shows, how this evidence establishes that her fibromyalgia was severe, or how this evidence shows that her condition medically equals a listed impairment. *Id.* The Court will not construct Plaintiff's arguments for her. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Accordingly, based on this record, the ALJ's treatment of Plaintiff's fibromyalgia does not require remand.[5]

### 2.    Diabetes

Plaintiff next complains that, despite being "proven in the record[,]" "the decision doesn't mention diabetes as a severe impairment or a not severe impairment or as any other impairment,

---

[5] To the extent that Plaintiff challenges the ALJ's evaluation of her treating rheumatologist, Anil Kapoor, M.D., the Court addresses that issue in its discussion of Plaintiff's lupus.

or as an impairment at all. It doesn't exist. It simply disappears at steps 2 and 3 and doesn't materialize in the later portions of the decision or virtually anywhere in the decision." *Plaintiff's Moving Brief*, ECF No. 21, p. 29. Plaintiff goes on to argue that "[s]uch disappearance prejudices every step of the sequential evaluation and renders the entire decision incomplete." *Id*. at 29−30.

Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff provides no citation to the record for her assertion that her diabetes is "proven in the record[.]" *See id*. at 29. The Court will not hunt through the record to find evidence to support her position. *See Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Moreover, an ALJ is not expected "to make reference to every relevant treatment note in a case." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Notably, an ALJ is entitled to overlook evidence that is "neither pertinent, relevant nor probative." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (rejecting argument that ALJ's failure to discuss x-rays required remand because "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information") (emphasis in the original). Here, Plaintiff asserts, without citation to the record, that her diabetes is "proven in the record[,]" but "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir.

19

2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff cites to no medical evidence documenting how her diabetes impairs her functioning or results in greater or different restrictions than those found by the ALJ and which would lead to a different outcome. *See Plaintiff's Moving Brief*, ECF No. 21, pp. 29–30. Accordingly, based on this record—*i.e.*, where Plaintiff has made no showing how the ALJ's failure to specifically mention her diabetes harmed her—the ALJ's failure is, at most, harmless error and does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"); *Chetoka v. Colvin*, No. CIV.A. 13-941, 2014 WL 295035, at *13 (W.D. Pa. Jan. 27, 2014) ("Although Plaintiff is correct that the ALJ did not provide a discussion of her alleged sleep disturbances, hypertension, and bipolar disorder, this omission was not error. . . . None of the sources that examined Plaintiff or her medical records attributed any limitations to these alleged impairments.").

### 3.      Lupus, hypertension, and hypothyroidism

Plaintiff also argues that the ALJ erred at step three because he failed to consider the combination of her impairments, both severe and non-severe, and erred in finding that Plaintiff's impairments were not the medical equivalent of any listing. *Plaintiff's Moving Brief*, ECF No.

20

21, pp. 30−33. Plaintiff specifically points to Plaintiff's diagnosed lupus, hypertension and hypothyroidism, and argues that her conditions medically equal Listing 14.02, which addresses systemic lupus erythematosus ("SLE"). *Id*.

At the time of the ALJ's decision on May 9, 2017, Listing 14.02 addressed SLE as follows:

14.02 Systemic lupus erythematosus. As described in 14.00D1.[6] With:

A. Involvement of two or more organs/body systems, with:
1. One of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

Or

B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

---

[6] Listing 14.00D1 addresses how SLE is documented and evaluated:

1. Systemic lupus erythematosus (14.02).
a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.00D1 (2017).

    1.  Limitation of activities of daily living.
    2.  Limitation in maintaining social functioning.
    3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.02 (2017). Manifestations are "repeated" if they occur an average of three times per year, or once every 4 months, with each occurrence lasting 2 weeks or more; or, if the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or if they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks. *Id*. at § 14.00I3. A "marked" limitation means that the signs and symptoms of SLE interfere seriously with a claimant's ability to function. *Id*. at § 14.00I5 (explaining further that, although use of a scale is not required, "marked" would be the fourth point on a five-point scale and that a claimant may have a marked limitation when several activities or functions are impaired, or even when only one is impaired). A claimant "need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [the claimant's] ability to function independently, appropriately, and effectively." *Id*.

At step two, the ALJ found that Plaintiff's lupus was a severe impairment, but that Plaintiff's hypertension and hypothyroidism were not severe: "Through the date last insured, the claimant's hypothyroidism and hypertension did not result in any significant end organ damage and had no more than a minimal effect on her ability to perform basic work activities and were 'non-severe' impairments." R. 74. At step three, the ALJ concluded that Plaintiff did not meet or medically equal Listing 14.02, reasoning as follows:

> The claimant has lupus, but the record shows that it was generally under control through the date last insured (Exhibit 2F). The record does not document involvement of 2 or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity and at least 2 of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). The

22

> record does not show repeated manifestations of SLE, with at least 2 of the
> constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary
> weight loss) and one of the following at the marked level: (1) limitation of the
> activities of daily living; (2) limitation in maintaining social functioning; (3)
> limitation in completing tasks in a timely manner due to deficiencies of
> concentration, persistence, or pace. Therefore, I find that the claimant's lupus did
> not meet or equal Listing 14.02 through the date last insured.

R. 75. At step four, the ALJ detailed years of medical evidence relevant to Plaintiff's SLE,

including, *inter alia*, that progress notes from June to August 2005 reflect that Plaintiff had only

minor lupus symptoms and that notes from September 2005 to March 2006 indicate that Plaintiff

was doing well, R. 76; in August 2006, Plaintiff complained of fatigue and arthralgias after a

first trimester miscarriage, but her examination was unremarkable and she declined medication

(Imuran) later that month because she was not symptomatic, *id*.; in September 2006, Plaintiff

reported only marginal improvement in her lupus symptoms, but her examination was

unremarkable, *id*.; Plaintiff denied any lupus symptoms in February 7, 2007, when she was six

months pregnant, and again on May 25, 2007, *id*.; progress notes from February 25, 2008, reflect

periodic/minor SLE, *id*.; in March 2009, Plaintiff was doing well with no rash or joint issues, *id*.;

progress notes from April 15, 2009, reflect a recurrence of Plaintiff's lupus symptoms, but

examination revealed only a minor forearm rash, and progress notes from June 24 and August

19, 2009, reflect that Plaintiff was doing well, R. 77; on September 23, 2009, Plaintiff reported

hair loss and increased fatigue, but notes from April 21 to October 4, 2010, reflect that her lupus

symptoms were under control while she was pregnant, *id*.; progress notes from November 11 to

December 30, 2010, reflect that Plaintiff was doing exceptionally well with no postpartum lupus

flare-ups and normal thyroid function, *id*.; Plaintiff reported hair loss and lupus rash on January

26 and April 21, 2011, as well as bilateral knee tenderness on May 23, 2011, *id*.; progress notes

from June 15, 2011, reflect that Plaintiff, after having restarted Imuran, reported an improvement

in her symptoms, *id*. The ALJ also noted Plaintiff's testimony that she was able to care for her children and her home and that she is able to drive. *Id*. The ALJ further noted that Plaintiff was able to sit for one hour through the administrative hearing. *Id*.

This thorough review by the ALJ of the evidence relevant to Listing 14.02 permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."). This record constitutes substantial evidence supporting the ALJ's findings at step three that Plaintiff's SLE was generally under control through June 30, 2011, the date on which Plaintiff was last insured, and that the evidence does not reflect repeated manifestations of SLE with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) or any marked limitation of the activities of daily living, in maintaining social functioning, or in completing tasks in a timely manner due to deficiencies of concentration, persistence, or pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.02 (2017). While Plaintiff complains that the ALJ erred in failing to properly consider her non-severe impairments of hypertension and hypothyroidism in combination with her SLE and other impairments, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing, including" Listing 14.02.  *See Jones*, 364 F.3d at 505; *Rivera*, 164 F. App'x at 262−63. Even if the ALJ erred by not specifically referring to hypertension and hypothyroidism at step three, Plaintiff has not established that this failure harmed her where substantial evidence supports the ALJ's determination that she does not meet or medically equal any listing. According, the ALJ's

24

omission amounts, at most, to harmless error that does not require remand. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

Plaintiff insists that her SLE medically equals Listing 14.02, relying on limitations and findings identified in a medical source statement dated January 12, 2017, authored by her treating rheumatologist, Anil Kapoor, M.D. *Plaintiff's Moving Brief*, ECF No. 21, pp. 32–33 (citing R. 562–63). Plaintiff's argument is not well taken.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation

25

marks and citations omitted). An ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, after detailing years of medical records, including progress notes from Dr. Kapoor, the ALJ specifically considered Dr. Kapoor's 2017 medical source opinion, but assigned it "little weight," reasoning as follows:

> In a January 12, 2017 medical source statement, Dr. Kapoor stated that the claimant has fibromyalgia with such symptoms as 11 of 18 specific tender points; cognitive dysfunction; muscle pain and weakness; insomnia; severe fatigue; and depression. Dr. Kapoor stated that the claimant has chronic daily symptoms and no major improvement is expected. The claimant does not have the stamina and endurance to work an easy job 8 hours per day, 5 days per week. Gross and fine manipulation

are limited to 50% bilaterally. The claimant has marked limitation of the activities of daily living; marked limitation in maintaining social functioning; and marked limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. Dr. Kapoor stated that the claimant is likely to be off task 25% of a typical work day and estimated that she is likely to be absent from work about 4 days per month. Dr. Kapoor stated that the earliest date that these conditions were present was May 23, 2011 (Exhibit 10F).

Dr. Kapoor's statement is given little weight as the doctor indicates that the 1990 ACR Criteria were met but the statement indicates only 9 positive tender points and does not indicate that the tender points are found bilaterally. This tender point analysis is contrary to Exhibit 4F where it is indicated that no fibromyalgia trigger spots were present. Moreover, this statement is from January 12, 2017, which is past the [date last insured]. As discussed previously, very minor fibromyalgia trigger spots were noted on July 27, 2005 (Exhibits 2F and 8F), but fibromyalgia does not appear to be an issue again until January 17, 2014 (Exhibit 2F, p. 30). There is no evidence that the claimant's fibromyalgia was a "severe" impairment until after the [date last insured] had passed. Dr. Kapoor's records for the period at issue generally show that the claimant's SLE was under control and that her 2 pregnancies were uneventful and do not mention fibromyalgia (Exhibit 2F).

R. 78. The Court finds no error in the ALJ's analysis in this regard. Dr. Kapoor's statement is

inconsistent with other medical evidence and is dated more than five years after June 30, 2011,

the date on which Plaintiff was last insured for benefits. *See Hubert*, 746 F. App'x at 153;

*Brunson*, 704 F. App'x at 59–60; *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743,

746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion nearly five

years after the date last insured "lacked probative value" because it  "shed no light" on the

claimant's condition during the relevant period); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-

03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in

assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more

than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the

disability evaluation period") (citations omitted). Accordingly, the Court rejects Plaintiff's

request to remand on this basis.

### C.     RFC

Plaintiff next argues that substantial evidence does not support the ALJ's RFC

determination. *Plaintiff's Moving Brief*, ECF No. 21, pp. 34–40. A claimant's RFC is the most

the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is the ALJ who

is charged with determining a claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also*

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or

examining physicians or State agency consultants—must make the ultimate disability and RFC

determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to

consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only

"credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see*

*also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to include "a limitation [that] is

supported by medical evidence, but is opposed by other evidence in the record" but "[t]his

discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported

reason" and stating that "the ALJ also has the discretion to include a limitation that is not

supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work with

certain additional limitations:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the following residual functional capacity:
> The claimant could perform sedentary work (lift and carry 10 pounds occasionally
> and less than 10 pounds frequently; stand/walk 2 hours in an 8-hour day; and sit 6
> hours in an 8-hour day). The claimant can never climb ropes, ladders, or scaffolds
> and can never be exposed to unprotected heights or hazardous machinery. The
> claimant can occasionally climb stairs and ramps; never crawl; and occasionally
> stoop and crouch. Work must be performed in an environment free of fast-paced
> production requirements and with only occasional changes to essential job function
> where productivity is measured at the end of the day. The claimant can perform
> occasional reaching overhead and frequent reaching in all other directions. The

claimant can perform frequent fingering. The claimant is able to do only simple and repetitive tasks.

R. 75. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, progress notes from June to August 2005, reflecting that Plaintiff had only minor symptoms of lupus and fibromyalgia, and notes from September 2005 to March 2006, reflecting that she continued to do well, R. 76; in August 2006, Plaintiff complained of fatigue and arthralgias recurring after a recent first trimester miscarriage, but her examination was unremarkable and she declined medication (Imuran) later that month because she was not symptomatic, *id*.; in September 2006, Plaintiff reported only marginal improvement in her lupus symptoms, but her examination was unremarkable, *id*.; Plaintiff denied any lupus symptoms in February 7, 2007, when she was six months pregnant, and again on May 25, 2007, at her first postpartum visit, *id*.; progress notes from February 25, 2008, reflect periodic/minor SLE, *id*.; in March 2009, Plaintiff was doing well with no rash or joint issues, *id*.; progress notes from April 15, 2009, note a recurrence of Plaintiff's lupus symptoms, but examination revealed only a minor forearm rash, and progress notes from June 24 and August 19, 2009, reflect that Plaintiff was doing well, R. 77; on September 23, 2009, Plaintiff reported hair loss and increased fatigue, but notes from April 21 to October 4, 2010, reflect that her lupus symptoms were under control while she was pregnant, *id*.; progress notes from November 11 to December 30, 2010, reflect that Plaintiff was doing exceptionally well with no postpartum lupus flare-ups and normal thyroid function, *id*.; Plaintiff reported hair loss and lupus rash on January 26 and April 21, 2011, as well as bilateral knee tenderness on May 23, 2011, *id*.; progress notes on June 15, 2011, reflect that Plaintiff, after having restarted Imuran, reported an improvement in her symptoms, *id*. The ALJ also noted that Plaintiff testified that she was able to take care of her children and her home and that she drove. *Id*. The ALJ further noted that Plaintiff was able to sit for one hour through the administrative

hearing. *Id*. The record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff argues, however, that substantial evidence does not support the RFC because the ALJ rejected the only medical opinions in the record—Dr. Kapoor and the state agency physicians—and instead relied on "lay intuitions, sit and squirm observations and irrelevant anecdotal information[.]" *Plaintiff's Moving Brief*, ECF No. 21, p. 38. Plaintiff's argument is not well taken. As a preliminary matter, it is the ALJ—not treating or examining physicians or state agency physicians—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. In addition, for the reasons previously discussed, the ALJ properly discounted Dr. Kapoor's January 12, 2017, medical source statement because it was inconsistent with the medical evidence and post-dated by more than five years the date on which Plaintiff was last insured. R. 78. In complaining that the ALJ accorded little weight to that opinion, Plaintiff offers no explanation and cites to no evidence that undermines the ALJ's assessment in this regard. *See Plaintiff's Moving Brief*, ECF No. 21, p. 38. Similarly, although Plaintiff complains that the ALJ afforded little weight to the opinions of the state agency medical consultants, she again fails to explain how the ALJ erred in doing so. *See id*. Moreover, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (stating that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"). In any event, the ALJ did not simply rely on his lay opinion in making the RFC determination. While the ALJ assigned little weight to the opinions of record, the ALJ detailed years of medical evidence and

hearing testimony, as discussed above, when determining Plaintiff's RFC. R. 76−78. Notably, Plaintiff does not point to any different or additional limitations that the ALJ should have included in the RFC had he accorded greater weight to the medical opinions of Dr. Kapoor and the state agency medical consultants. *See Plaintiff's Moving Brief*, ECF No. 21, p. 38.

To the extent that Plaintiff complains that the ALJ improperly relied on "sit and squirm observations[,]" *id*., the ALJ's observation at the hearing was but one of a number of factors that the ALJ took into account in crafting of the RFC determination. R. 76−78; *cf. Holley v. Colvin*, 975 F. Supp. 2d 467, 480–81 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec*., 590 F. App'x 167 (3d Cir. 2014) (finding no error in the ALJ's consideration of the plaintiff's ability to sit through a 65-minute hearing where the ALJ's observations did not serve as the "sole basis" for his assessment of the plaintiff's subjective complaints); *Guyer v. Saul*, No. 3:18-CV-01931, 2020 WL 497286, at *10 (M.D. Pa. Jan. 15, 2020), *report and recommendation adopted*, No. 3:18CV1931, 2020 WL 504658 (M.D. Pa. Jan. 30, 2020) (finding the RFC assessment was supported by substantial evidence where the ALJ considered, *inter alia*, his own observation at the hearing undermined the claimant's assertions of the need to change positions every couple of minutes while sitting); *Bokor v. Comm'r of Soc. Sec*., No. CIV.A. 10-5880, 2012 WL 254130, at *10 (D.N.J. Jan. 27, 2012), *aff'd*, 508 F. App'x 186 (3d Cir. 2012) (finding that the ALJ provided a clear and satisfactory explanation of the basis of the RFC when "he adequately justified his decision to give little credence to the 'conclusory statements' contained therein by stating that they were not corroborated by the clinical evidence of record and were inconsistent with his personal observations of Plaintiff at the hearing").

Plaintiff goes on to argue that the ALJ failed to consider her non-severe impairments of diabetes, hypothyroidism, and hypertension when crafting Plaintiff's RFC. *Plaintiff's Moving*

*Brief*, ECF No. 21, pp. 38–40. However, Plaintiff cites to no record evidence that supports her apparent assertion that these non-severe impairments require different or more restricted limitations, nor does she identify what those limitations should be, or otherwise explain how remanding this action would lead to a different RFC. *See generally id*. As noted earlier, the Court will not hunt through the record to find evidence or construct Plaintiff's arguments for her. *See Shinseki*, 556 U.S. at 409–10; *Atkins*, 2020 WL 1970531, at *4; *Claxton*, 766 F.3d at 307.

In short, the Court concludes that the ALJ's RFC determination is consistent with the record evidence and enjoys substantial support in the record.

## V.   CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  November 19, 2020                          *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE